NELSON, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 12, 1932—February 7, 1933.*

For the plaintiff in error there was a brief by *Walker & Christenson* of Lancaster, and oral argument by *Otto F. Christenson.*

For the defendant in error there was a brief by the *Attorney General, Fred Risser,* district attorney of Dane

county, *Carl Christianson,* assistant district attorney, and *George F. Lange,* all of Madison, and oral argument by *Mr. Christianson* and *Mr. Lange.*

The following opinion was filed December 6, 1932:

NELSON, J.   The defendant contends that the court erred (1) in sustaining the verdict of the jury, (2) in instructing the jury as to the presumption of innocence, and (3) in refusing to grant a new trial.

The complainant was delivered of a child on November 15, 1929.   The complaint herein was made on October 29, 1931, nearly two years after the birth of said child and long after the complainant had removed to the city of Madison from Grant county where the alleged intercourse with the defendant took place.

The complainant testified in substance that she had several acts of intercourse with the defendant in February, 1929, although wholly unable to fix exact dates or to associate said acts with any events other than one dance held at Fennimore some time during the month of February; that such intercourse took place in a Ford car, which she thought was defendant's, on the highways of Grant county; that she had never had intercourse with any other person and that the defendant was the father of her child.   During the month of February, 1929, when conception undoubtedly took place since the child was a full-term normal child, the complainant was between eighteen and nineteen years of age and was engaged in teaching a rural school in Grant county. She was a graduate of the Boscobel high school and had completed a one-year rural teacher's course at the State Teachers College at Platteville.   The complainant further testified that while dancing with the defendant in May, 1929, she spoke to him about her pregnancy and of his responsibility therefor but that he only laughed at her.   She

testified: "I started to tell him and he laughed at me and I decided that was the end." She also testified that in March, April, or May, 1930, she met the defendant at another dance and at that time told him that she had given birth to a child and accused him of its parentage. It is undisputed that at no time after she became pregnant or after her child was born did she seek out the defendant for the purpose of charging him either with the responsibility for her condition or with his being the father of her child. Her meeting him at the dances in May, 1929, and in the spring of 1930, hereinbefore mentioned, was purely casual and accidental. She was not an ignorant unschooled country maiden. On the contrary she had received a very considerable education. Although she knew where the defendant lived at all times between the discovery of her pregnancy in March, 1929, and the making of her complaint on October 29, 1931, she neither wrote him a letter nor made any deliberate attempts to get in touch with him or to bring home to him the charge of paternity. In June, 1929, however, after she had left Grant county and was residing in the city of Madison, she did write a letter to one Bob Hamilton which concededly was never answered. Hamilton was produced as a witness upon the trial and testified that he received a letter from the complainant, the contents of which were in substance as follows: "Dear Bob: I have not seen you for quite a while. I will write you and let you know that I am in a family way and you got me that way, and I would like to see you." The letter was not produced upon the trial. There was evidence that it was either lost or destroyed and the introduction of evidence as to its contents was permitted. The complainant admitted writing a letter to Hamilton but denied that she charged him with being responsible for her condition. Her testimony, however, as to the contents of the missing letter

was, to say the least, weak and unpersuasive. She was asked: "Did you mention in that letter about your being pregnant?" and she answered: "Not that I remember." "*Q.* That is, you might have said something about it, being pregnant, and you don't recall it? *A.* Yes." Later on she was asked this question and answered as follows: "You want us to understand, without ever having gone with Bob Hamilton alone, you wrote a letter to him in June, just a few months before this child was born, and said you wanted to see him, wanted him to come to Madison. That is a fact, isn't it? *A.* Yes." Upon the trial Hamilton testified that he had several acts of intercourse with complainant during the month of February, 1929. This testimony was disputed by complainant.

The complainant testified as hereinbefore recited that the acts of intercourse with defendant occurred in a Ford car on the highways of Grant county during the month of February, 1929. The defendant owned a Ford car of the kind described by complainant but it was undisputed that defendant's car was put into winter storage late in December, 1928, and remained there until late in March. It also appeared without dispute that the farms of defendant's father and of a near-by neighbor for whom defendant worked for some time during the winter of 1929, were located near to county trunk Q and at a distance of approximately eight miles from Fennimore, where complainant testified the dance was held from which she was taken by defendant in a Ford car. There was testimony which was apparently credible to the effect that during January, February, and March the by-roads and county trunk Q, near to which the defendant resided, were so badly drifted with deep snow as to be absolutely impassable for cars and that no cars even attempted to travel them. The winter of 1929 was referred to in the testimony as the winter of the big snow. Though the state attempted to meet this testimony

its attempt was weak, and the evidence produced by the state should have given rise to no doubt as to the actual impassability of the by-roads and county trunk Q for cars. If any doubt existed in the mind of the court as to the actual condition of the roads during the winter of 1929, that doubt should have been dispelled by the affidavits of several reputable and disinterested people who resided. in that vicinity which were offered in support of defendant's motion for a new trial. While the statements contained in such affidavits were cumulative in character, they seem to establish without question the actual condition of the roads during January, February, and March of 1929.

On the motion for a new trial affidavits made by all three members of the school board of the district in which complainant taught were presented to the court. The substance of these affidavits was that in February, 1929, a special meeting of the board was held at which the complainant was charged with having improperly entertained men in the schoolhouse after school hours; the complainant did not deny this charge but merely cried, promising to discontinue such improper conduct.

Other affidavits were presented to the court in support of the motion for a new trial which contained statements tending to show that complainant had intercourse with two men or boys other than the defendant and Hamilton during February, 1929, which statements, if testified to by the affiants in court and if believed by a jury, would clearly give rise to a reasonable doubt as to the guilt of the defendant.

The court instructed the jury as to the presumption of innocence as follows:

"The defendant is presumed to be innocent *until* the evidence, impartially and rationally considered under the rules given you, convinces you and each of you beyond a reasonable doubt that the defendant is the father of the child

begotten upon the body of the said Wilma on or about or within a few days of the 15th day of February, 1929, and which child was born upon November 15, 1929."

It is contended by defendant that this instruction was both erroneous and prejudicial. That the instruction was erroneous under the established law of this state, there can be no doubt. *Emery v. State,* 101 Wis. 627, 78 N. W. 145; *Roen v. State,* 182 Wis. 515, 196 N. W. 825; *Riley v. State,* 187 Wis. 156, 203 N. W. 767; *Cobb v. State,* 191 Wis. 652, 211 N. W. 785; *Wille v. State ex rel. Kessler,* 192 Wis. 224, 212 N. W. 260.

While this court has uniformly held such an instruction to be erroneous it has not always considered such instruction prejudicial or reversible error. In *Riley v. State, supra,* Mr. Justice JONES, speaking for this court, said:

"If the evidence on the subject of non-access had been clear and satisfactory, perhaps this charge would not be held reversible error, but in view of the very unsatisfactory proof on this subject and the error in the instructions we think that the defendant is entitled to a new trial."

In *Cobb v. State, supra,* a similar instruction was criticised. The court reached the conclusion that the instruction complained of was not prejudicial because the trial court twice in his instructions told the jury that the presumption of innocence is not overcome *unless* from all the evidence in the case the defendant is proven guilty beyond a reasonable doubt. In *Wille v. State ex rel. Kessler, supra,* it was held that a similar instruction was erroneous, but due to the persuasive proof of guilt the charge was held nonprejudicial.

A correct instruction as to the presumption of innocence should be given in every criminal case. It should also be given in every case involving the charge of unlawful parentage. Its purpose is specifically to caution the jury "to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to

reach their conclusion solely from the legal evidence adduced. In other words, the rule about burden of proof requires the prosecution by evidence to convince the jury of the accused's guilt; while the presumption of innocence, too, requires this, but conveys for the jury a special and additional caution (which is perhaps only an implied corollary to the other) to consider, in the material for their belief, *nothing but the evidence,* i. e. no surmises based on the present situation of the accused. This caution is indeed particularly needed in criminal cases." 5 Wigmore, Evidence (2d ed.) p. 503.

In this state the rule now seems to be that if in a given criminal case proof of guilt is persuasively established, then in such case an instruction similar to the one complained of, while erroneous, would be passed over as non-prejudicial. The reverse of this rule seems also sound. In case the proof is not persuasive, such an instruction may well be held prejudicial error.

While it may be said that the evidence is sufficient to sustain the verdict of the jury, we reach the conclusion in this case from the many circumstances which give rise to grave doubts as to the truthfulness of the complainant's testimony and as to the guilt of the defendant that it is probable that justice has miscarried. We therefore exercise the authority which sec. 251.09, Stats., confers upon this court and reverse the judgment that a new trial may be had. *Jacobsen v. State,* 205 Wis. 304, 237 N. W. 142; *State v. Hintz,* 200 Wis. 636, 229 N. W. 54.

*By the Court.*—Judgment reversed, with directions to grant a new trial.

FOWLER and WICKHEM, JJ., dissent.

A motion for a rehearing was denied, without costs, on February 7, 1933.