JACOBSEN, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 14—June 12, 1931.*

For the plaintiff in error there was a brief by *Francis J. Rooney* of Appleton and *Clifford & Dilweg* of 'Green Bay, and oral argument by *G. F. Clifford*.

For the defendant in error there was a brief by *V. C. Lewellen,* district attorney of Brown county, *C. G. Chadek,* assistant district attorney, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt* and *Mr. Chadek.*

ROSENBERRY, C. J. There are three assignments of error: (1) That the court erred in refusing to set aside the verdict because there existed a reasonable doubt as a matter of law of the defendant's guilt. (2) That the court erred in refusing to grant a new trial because the verdict was against the preponderance of the evidence. (3) That the court erred in refusing to grant a new trial on the ground of newly-discovered evidence. ·

(1st) Upon the trial the defendant attempted to establish the fact that the complaining witness, Renata Zastrow, had intercourse with other men at a time when it made it impossible for her to say who was the father of the child. The complaining witness claimed that she never had intercourse with any other man and with the defendant at no other time or place. The defense depended upon the testimony of one Raymond Janssen and Reuben Schubring to establish the fact of intercourse with other men at or about the time in question. Janssen testified that some time in the month of July he saw the complaining witness, while she was at the home of one Burt, in the act of having sexual intercourse with one Harold Rusch. His testimony, however, was to some extent impeached upon cross-examination and in other respects contradicted by other witnesses so that the credibility of this witness became clearly a matter for the jury. The witness Schubring claimed to have seen the complaining witness in the act of sexual intercourse with one Raymond Janssen. He testified that he could identify the parties by their voices, that he saw them walk out of the hall, and that he knew who were in the automobile at the time in question. The defendant attempted to support the testimony of Janssen and Schubring by that of one Anna Offermann, who was unfriendly to the Burts but who claimed she was not unfriendly to the complaining witness. She testified, however, only to collateral matters which tended to corroborate to some extent the testimony of Schubring and Janssen.

It is true, as held in *Busse v. State,* 129 Wis. 171, 108 N. W. 64, that paternity cannot be established beyond a reasonable doubt if it appears that the prosecutrix had intercourse with another man at a time consistent with the latter's responsibility for the pregnancy. In that case there was a trial by the court which found the defendant guilty. This finding of the court was held to be against the clear preponderance of the evidence in the case and on that ground

the judgment was reversed. In this case the fact of intercourse with a man other than the defendant was not established so conclusively as to enable the court to say that a reasonable doubt exists as a matter of law. Under all the evidence it was a question of fact for the jury.

(2d) Defendant contends that there is no credible evidence sufficient to sustain the verdict. While there are many circumstances connected with the case that throw suspicion upon the story told by the prosecutrix, there are, on the other hand, some things which corroborate the testimony given by her. Certainly the court cannot say, as a matter of law, that the verdict of the jury is not supported by any credible evidence, nor is it contrary to the physical facts or all of the reasonable probabilities.

(3d) The defendant claims that his motion for a new trial should have been granted because he was surprised by the testimony of Renata Zastrow, the complaining witness, in which she denied being at the Burt home or in the village of Kaukauna at certain times and that he was therefore not in a position to get all of the witnesses necessary to refute that testimony. He did produce four witnesses who testified to the effect that she was in Kaukauna during the period in question. Under the rule established in such cases as *Walata v. State,* 180 Wis. 646, 193 N. W. 61, and *Hedger v. State,* 144 Wis. 279, 128 N. W. 80, the granting of a new trial upon the ground of newly-discovered evidence is a matter resting in the sound discretion of the trial court. As the trial court pointed out in denying the motion for a new trial, the instructions as to credibility of witnesses and weight of the evidence were favorable to the defendant. We find no abuse of discretion on the part of the trial court.

While we find no reversible error in the record, a careful study and consideration of the evidence in this case has led the court to the consideration of whether or not it should exercise the power conferred upon it by sec. 251.09, Stats.,

which provides that in any action brought to the supreme court if it shall appear to the court from the record that it is probable that justice for any reason has miscarried, the court may in its discretion reverse the judgment. This is not the ordinary bastardy case in which pregnancy has resulted from long association of the parties and repeated acts of sexual intercourse, and many of the salient facts in this case are undisputed in the evidence. The prosecuting witness testified that she was at a party at the home of one George Lau; that at the request of the defendant she accompanied him in his Chrysler car to a point near the Kelso cemetery; that there she had a single act of intercourse; that he had never made any improper advances to her before. She further testified that she told defendant Jacobsen about two weeks after the party of her condition. The likelihood of a virtuous young woman without any solicitation accompanying a man under the circumstances testified to by the prosecuting witness and a pregnancy resulting from a single first act of intercourse are circumstances which arouse some suspicion. She testified that the last day of her July menstrual period was July 12th; that the last day of her August period should have been August 9th, two days prior to the date of the intercourse which is fixed beyond question as August 11th. There is no evidence in the record indicating any reason for irregularity in the menstrual period of the complaining witness. On the contrary, she testified that it had been uniformly regular. The child was born on April 22, 1930, or 254 days after the act complained of or 284 days after the last date of her July menstrual period. It is also undisputed that the child was a full-term child and the expert testimony in the record discloses that 281 days is the average normal period of pregnancy, being substantially nine months; that a child being born 256 days after the date of intercourse would be an eight-months child. The expert further testified that the prosecutrix should have con-

ceived under the circumstances ordinarily within twenty-eight days after the beginning of her July sickness or on or before August 5th. While of course, as the expert testified, there are exceptions, where dates are so definitely fixed as in this case with no possibility of error and nothing suggested which would account for any irregularity, grave doubt is thrown upon the whole situation. According to the undisputed testimony of the complaining witness she skipped one entire period. Her August period should have started on August 5th and have been completed on the 9th, but it did not start at all, and she says she did not have intercourse until the 11th. Furthermore, the date of the child's birth and the fact that it was a full-term child indicate very strongly that conception must have taken place before August 5th, although of course it is possible, but only possible, that it resulted from a subsequent intercourse. Reuben Schubring testified that in the month of September she accused him of being the father of her child. This was not denied by the complaining witness except as she testified upon her direct examination that she had never had intercourse with any other man than the defendant. During the course of the trial it was proven without objection that the defendant was married in October, 1929, and that there was a child born to him and his wife on March 9, 1930, being about six months after his marriage. This could have no probative effect upon the question of whether or not the complaining witness at the time charged had intercourse with the defendant. It could have only been offered for the purpose of prejudicing the jury upon the question of defendant's guilt. There are insinuations through the record to the effect that the defendant was a rich man. So far as the record discloses, if anything, it discloses the contrary. There are other circumstances which lead us to the conclusion that in this case we should exercise the power conferred upon us by sec. 251.09, Stats., and reverse the judgment. This is a

power which for very apparent reasons we exercise with some reluctance and with great caution, but a careful consideration of all the facts in this case requires us to exercise it here. The result of this case is of great importance to both parties. It is of vital importance to the defendant. If by the judgment of the court he is required to support a child which is not his, he not only suffers a grievous injustice but is irreparably injured in his reputation and character. He will for the remainder of his life be humiliated and disgraced and his family be unjustly deprived of the full benefits of his skill and industry. The law requires proof of guilt beyond a reasonable doubt, and while we cannot substitute our judgment for that of the jury, we are convinced that it is probable that justice has miscarried. *State v. Hintz,* 200 Wis. 636, 229 N. W. 54.

*By the Court.*—Judgment is reversed, and cause remanded for a new trial or for such other proceedings as the trial court may direct.