COURT OF APPEALS
DECISION
DATED AND FILED

October 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP324**

Cir. Ct. No. 2015CF4879

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

MOCHE LAMAR GREER,

      DEFENDANT-APPELLANT.

      APPEAL from an order of the circuit court for Milwaukee County: CAROLINA M. STARK, Judge. *Affirmed*.

      Before White, C.J., Colón, P.J., and Geenen, J.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Moche Lamar Greer, pro se, appeals an order denying his motion for postconviction relief under WIS. STAT. § 974.06 (2023-24).[1] He alleges that the circuit court improperly rejected his claims of newly discovered evidence and ineffective assistance of counsel. Alternatively, he alleges that he is entitled to a new trial in the interest of justice. We reject his claims and affirm.

## BACKGROUND

¶2 On August 22, 2015, Gabriel Velazquez was shot and killed while driving past a group of people gathered outside the Toolbox Tavern in Milwaukee. The State charged Greer with first-degree reckless homicide in the death. The matter proceeded to trial, and the jury found Greer guilty as charged.

¶3 The central issue at trial was whether Greer was correctly identified as the shooter. The State's evidence included videos recorded by the tavern's surveillance cameras and by a neighborhood resident's security system. The videos showed a Saturn vehicle parking near the tavern, two men getting out of the vehicle, and then one of those men engaging in a physical altercation with Velazquez. The recordings also showed a man in a blue shirt holding a gun behind his back and another man lunging for and taking the gun. In the video from a neighbor, recorded from a distance, a subject was seen with his arm outstretched, who appeared to be firing a gun at Velazquez's moving vehicle. The shooter and his companion could then be seen walking toward and getting into the Saturn, and driving away.

¶4 Andrew Sanders testified for the State and said that he and Greer went to the Toolbox Tavern on August 22, 2015. Sanders said that he has known Greer for "years" and their relationship is "cool. Like a brother cool." Sanders said that

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

Greer drove the pair to the tavern in a car owned by Shontell Nettles, the mother of Sanders's child, and Sanders said that he recognized himself and Greer as the men seen on the surveillance video driving up to the tavern and getting out of Nettles's car. Sanders said that a group of people was standing around outside the tavern and an altercation erupted between Sanders and a person in the group. Some minutes later, a car drove towards the crowd, and Sanders said that he saw Greer fire a gun at that moving car. Finally, Sanders testified that he and Greer were the men seen on the video getting back into Nettles's car and that Greer drove them away from the scene.

¶5 Lanz Harwell testified that he was a friend of Velazquez's and identified himself in the surveillance videos as the man in the blue shirt. Harwell also confirmed that he was the person on the video holding a gun and trying to keep it away from another man who ultimately seized it. Harwell testified that he later viewed a photo array and picked Greer's photo as the person seen on video lunging for and grabbing the gun, then firing shots. Harwell further testified that he did not know Greer but had seen him at the tavern on prior occasions.

¶6 Detectives testified and described receiving information about the Saturn in the surveillance videos, locating it three days after the shooting parked in front of the apartment complex where Nettles lived, and encountering Sanders exiting the complex while officers were examining the car. A police search of the Saturn's interior uncovered a bullet casing. A firearm and toolmark examiner testified that the casing in the car and the bullet fragments recovered from Velazquez's body were fired from the same caliber gun.

¶7 Greer testified on his own behalf and denied that he was at the Toolbox Tavern on the night of August 22, 2015. Emphasizing flaws in the quality

of the surveillance videos, he asserted that he was not the person recorded firing a gun. He also stated that Sanders falsely testified to obtain immunity from a charge pending against him in a separate matter. Greer also acknowledged that Harwell had viewed a photo array and identified Greer as the shooter by selecting Greer's December 2014 booking photo. While Greer agreed that the photo "looks a lot like the person who was involved in the shooting," he offered into evidence his later booking photo, taken when he was arrested five days after the shooting. The August 27, 2015 booking photo showed Greer with his hair cut in a style different from that shown in his December 2014 photo. Greer testified that he had gotten a new haircut on August 17, 2015, a date that he recalled with certainty.

¶8 Greer called a witness, Otis Johnson, who testified that he was socializing at the Toolbox Tavern on August 22, 2015, but left before the shooting occurred. Johnson identified a booking photo of Sanders, stating that it "looks like Drew," and Johnson testified that he did not see Sanders at the Toolbox Tavern on August 22, 2015. Johnson also testified that he knew Greer and did not see him at the tavern on August 22, 2015. Johnson went on to say that he was Greer's barber, and although Johnson did not recall exactly when he last gave Greer a haircut, the August 27, 2015 booking photo showed Greer with the hair style that Johnson provided.

¶9 Following the jury's guilty verdict, Greer pursued a direct appeal with the assistance of counsel, seeking a new trial on the ground that aspects of the State's closing argument deprived him of due process and a fair trial. We affirmed. *State v. Greer* (*Greer I*), No. 2017AP1396-CR, unpublished slip op. (WI App Oct. 30, 2018). Our supreme court denied review.

¶10    Greer, proceeding pro se, next filed the postconviction motion underlying this appeal.  He asserted that he had newly discovered evidence, specifically, an affidavit from one Herman W. Highshaw, a prison inmate.  In the affidavit, Highshaw alleged that on August 22, 2015, he was at the Toolbox Tavern with his "friend, Demarion Allen," and witnessed the shooting that caused Velazquez's death.  Highshaw alleged that Greer was not present at the time of the shooting.  According to the affidavit, Highshaw saw two men that he knew as "Cuba" and "Drew" arrive at the tavern in a Saturn and engage in an argument with some individuals in front of the tavern.  As the argument escalated, Highshaw saw one of the men involved driving a vehicle at high speed in front of the tavern.  Highshaw claimed that he next saw Cuba push Drew aside, "observe[d] Cuba fire about two shots towards the front of the vehicle," and "then hear[d] an additional three more shots."  Highshaw went on to allege that he saw Cuba and Drew leaving the scene in the Saturn, described how he and his friend drove away before the police arrived.  Following the foregoing description of events, Highshaw further averred that he "witnessed Cuba ... fire approximately 4-5 shots into the moving vehicle."

¶11    Greer argued that Highshaw's allegations warranted an evidentiary hearing and a new trial.  Greer additionally alleged that his trial counsel was ineffective for failing to: pursue exculpatory evidence; present evidence of a third-party perpetrator; subpoena two alibi witnesses; and identify and investigate Highshaw.  Greer alleged that his postconviction counsel was ineffective in turn for failing to raise these claims.

¶12    The circuit court denied Greer's postconviction motion in a written order entered without a hearing.  Greer appeals, renewing the claims for relief that he raised in his postconviction motion, and alternatively alleging that he is entitled to a new trial in the interest of justice.

5

**DISCUSSION**

¶13    Pursuant to WIS. STAT. § 974.06(4), a convicted person must "raise all grounds regarding postconviction relief in his or her original, supplemental or amended motion." *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994). If the person fails to do so, he or she is procedurally barred from raising claims under § 974.06 absent a sufficient reason for not raising those issues earlier. *Escalona-Naranjo*, 185 Wis. 2d at 184-85.

¶14    Greer's postconviction motion here included a claim of newly discovered evidence. The discovery of new evidence may constitute a sufficient reason for a second or subsequent postconviction motion. *State v. Love*, 2005 WI 116, ¶43 & n.18, 284 Wis. 2d 111, 700 N.W.2d 62. The defendant must, however, demonstrate that the evidence at issue is newly discovered. *Id.*

¶15    To obtain a hearing on a claim of newly discovered evidence:

> a defendant must show specific facts that are sufficient by clear and convincing proof, when considered in the context of the record as a whole, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.

*State v. McAlister*, 2018 WI 34, ¶31, 380 Wis. 2d 684, 911 N.W.2d 77. If the defendant satisfies the foregoing requirements, "then 'the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial.'" *Id.*, ¶32 (citations omitted). Our supreme court has explained that "[a] reasonable probability of a different result exists if there is a reasonable probability that a jury looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Id.* (citations omitted).

¶16    Whether to grant a motion for a new trial based on newly discovered evidence rests in the circuit court's discretion. *State v. Avery*, 2013 WI 13, ¶22, 345 Wis. 2d 407, 826 N.W.2d 60.  We review a circuit court's discretionary decisions with deference. *Love*, 284 Wis. 2d 111, ¶26.

¶17    In this case, the circuit court assumed that Highshaw's affidavit satisfied the first four criteria of the newly discovered evidence test.  The court determined, however, that Greer did not establish a reasonable probability that the new evidence from Highshaw would lead to a different result at trial.  The court therefore denied Greer a new trial.  We see no basis to disturb that decision.

¶18    The allegations in Highshaw's affidavit were weak, often contradictory, and lacked corroboration, and the circuit court was correct in determining that there is no reasonable probability of a different outcome at a trial that includes the new evidence.  For example, Highshaw claimed that he went to the Toolbox Tavern with Demarion Allen on August 22, 2015.  No evidence supports the allegation, however, and Allen cannot corroborate it because he is dead; although Highshaw describes Allen as a "friend," the record reveals that Highshaw is presently serving sentences for killing Allen and mutilating his corpse.

¶19    Highshaw further alleged in his affidavit that, on the night of the homicide, he saw a Saturn vehicle arriving at the Toolbox Tavern, and that inside the car were two men known to him as Cuba and Drew.  Highshaw did not provide any information as to how he knew those men or the extent of his familiarity with them.

¶20    Highshaw described seeing "Cuba fire about 2 shots towards" a moving vehicle.  He also described seeing Cuba shoot "approximately 4 to 5 shots into" a moving vehicle.  Highshaw did not explain this discrepancy in his averments.

¶21 Highshaw further alleged that, without receiving any promise of a benefit, Highshaw elected to provide information about Greer's case to another inmate who was assisting Greer. Highshaw did not explain how he learned about the second inmate's role in Greer's efforts.[2] Highshaw also failed to explain why he did not contact authorities in 2015 to prevent a possible wrongful conviction if he desired to see justice done, and instead waited five years before coming forward with the information. Conversely, if Highshaw did take such steps, he failed to describe them or to describe the response he received.

¶22 Moreover, Greer offered no support for Highshaw's assertions. Greer did not, for instance, attempt to identify Highshaw in any of the videos recorded at the scene, and none of the other witnesses who were at the tavern identified Highshaw as being present. Highshaw's affidavit also could not explain why the two witnesses who identified Greer as the shooter would lie.

¶23 Accordingly, the Highshaw affidavit reflected that the only relevant new information that Highshaw could provide at trial was his belief that the shooter at the tavern on August 22, 2015, was nicknamed "Cuba," and that person was not Greer. The circuit court concluded that the "weight of the trial evidence against [Greer] is simply too strong for Highshaw's proposed testimony to create a reasonable probability of a different result at trial."

¶24 Indeed, the trial evidence against Greer was strong and substantial. It included, but was not limited to, testimony from two eyewitnesses, one a friend of Greer's and the other a friend of Velazquez's, who identified Greer as the gunman

---

[2] The inmate, who is identified in Greer's submissions, has a history of frivolous litigation and false statements to the court. *Tiggs v. Douma*, 2016 WL 492324, Nos. 00-CV-79-bbc, 00-CV-420-bbc, 01-CV-266-bbc, 01-CV-314-bbc, at *1 (W.D. Wis. Feb. 8, 2016); *Hashim v. Berge*, 2002 WL 32350073, No. 01-C-705-C, at *4-7 (W.D. Wis. Apr. 15, 2022).

at the Toolbox Tavern on August 22, 2015. The testimony was supported by video recordings and physical evidence. Further, Greer testified and acknowledged his December 2014 booking photo, from which an eyewitness identified him as the shooter. We cannot say that the circuit court wrongly concluded that the totality of the trial evidence against Greer was too weighty to be weakened by Highshaw's unsupported allegations. *See Avery*, 345 Wis. 2d 407, ¶32.

¶25 Greer suggests that the circuit court erred because it assessed the probability of a different result at a new trial by considering only the original trial evidence and the newly discovered evidence from Highshaw. In Greer's view, the circuit court should have also considered potential testimony from other possible witnesses that, Greer claims, his trial counsel could have presented but did not. The error is Greer's. A circuit court analyzing a claim of newly discovered evidence must assess the probability of a different outcome had the jury seen both "'the old and the new evidence.'" *McAlister*, 380 Wis. 2d 684, ¶32 (citation omitted). Thus, the circuit court here was required to "weigh[] the new evidence against the evidence presented at trial" to determine "whether a jury would have a reasonable doubt as to [Greer's] guilt." *See Avery*, 345 Wis. 2d 407, ¶32. The circuit court therefore properly reviewed the trial evidence in light of the threadbare and at times inconsistent new allegations in Highshaw's affidavit. *See id.*, ¶34. Upon doing so, the circuit court determined that Highshaw's allegations could not undermine the trial evidence, and the circuit court therefore denied relief.

¶26 In sum, the circuit court reviewed the record, applied the correct legal standard, and reached a reasonable conclusion. The circuit court therefore properly exercised its discretion. *See id.*, ¶32. Accordingly, we defer to the circuit court's conclusion. *Love*, 284 Wis. 2d 111, ¶26.

9

¶27 We turn to Greer's remaining claims. Greer alleged that his trial counsel was ineffective in multiple ways and that he had a sufficient reason for pursuing those claims in a second postconviction motion, namely, the ineffective assistance of his postconviction counsel, who failed to raise the claims during the proceedings underlying *Greer I*.

¶28 Ineffective assistance of postconviction counsel may, in some circumstances, constitute the sufficient reason required for an additional postconviction motion under WIS. STAT. § 974.06. *State v. Romero-Georgana*, 2014 WI 83, ¶36, 360 Wis. 2d 522, 849 N.W.2d 668. However, a mere allegation of ineffective assistance of postconviction counsel will not clear the procedural bar that the statute imposes. *Id.* Rather, a convicted person must "make the case of" postconviction counsel's alleged ineffective assistance. *State v. Balliette*, 2011 WI 79, ¶67, 336 Wis. 2d 358, 805 N.W.2d 334.

¶29 To make the case that postconviction counsel was ineffective, a convicted person must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Balliette*, 336 Wis. 2d 358, ¶¶3, 28. The test requires the convicted person to show both a deficiency in counsel's performance and prejudice as a result. *Strickland*, 466 U.S. at 687. A reviewing court may consider either prong of the analysis first, and if the convicted person fails to make an adequate showing as to one prong, we need not address the other. *Id.* at 697.

¶30 We begin and end with the deficiency prong. When, as in this case, a convicted person claims that postconviction counsel was ineffective for failing to raise issues, proof of the deficiency prong requires the person to allege and show that the neglected issues were "clearly stronger" than the claims that postconviction counsel pursued. *Romero-Georgana*, 360 Wis. 2d 522, ¶¶4, 46. The burden is on

the convicted person to satisfy the "clearly stronger" standard. *Id.*, ¶58. Our case law provides a well-settled methodology for the convicted person to apply, requiring the person to allege "sufficient material facts—*e.g.*, who, what, where, when, why, and how—that, if true, would entitle him to the relief he seeks." *Id.* (citation omitted).

¶31     In this case, Greer offered conclusory assertions that his new claims were "clearly stronger" than the issue that his postconviction counsel pursued on his behalf, but he failed to take the steps required to satisfy the standard. He did not examine the specifics of the current and prior claims; he did not set forth any facts showing why his new claims were clearly stronger than the issue that his counsel raised; and he did not analyze the comparative merits of the new claims in relation to the original claim. As the circuit court explained, Greer merely "present[ed] legal conclusions and summarily argue[d] that postconviction counsel was ineffective for failing to bring the claim[s] he now views as meritorious." More is required. A reviewing court "will not assume ineffective assistance from a conclusory assertion; [the defendant] must say why the claim he wanted raised was clearly stronger than the claims actually raised." *Id.*, ¶62. Because Greer failed to do so, the circuit court properly concluded that his current ineffective assistance of counsel claims were procedurally barred. *See id.*

¶32     Last, Greer asserts that this court should reverse his conviction pursuant to WIS. STAT. § 752.35. That statute permits us to order a new trial "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." *Id.* The decision rests in our discretion, but "reversals under ... § 752.35 are rare and reserved for exceptional cases." *State v. Kucharski*, 2015 WI 64, ¶¶5, 41, 363 Wis. 2d 658, 866 N.W.2d 697.

11

¶33 In support of a discretionary reversal, Greer asserts that "a miscarriage of justice has occurred and ... the real controversy has not been fully tried." Before this court exercises its discretionary power of reversal, however, we must first conclude "that the case may be characterized as exceptional." *State v. McKellips*, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258. Greer fails to offer an analysis of why this case satisfies "the exceptional standard." *See id.* Accordingly, we reject his claim. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). For all of the foregoing reasons, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.